## UNITED STATES DISTICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **GWENDOLYN JOHNSON** | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. _____ |
| **CHARLIE KING, JR.** | ) | **JURY TRIAL DEMANDED** |
| **AND** | ) | |
| **LOWNDES COUNTY COMMISSION** | ) | |
| Defendants. | ) | |

## COMPLAINT

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 to redress Defendants' retaliation against Plaintiff for exercising her clearly established rights under the First Amendment to the United States Constitution. Defendants used the power of government office to send an unauthorized cease-and-desist letter threatening Plaintiff with legal action because she publicly criticized county commissioners for alleged voter fraud, including harvesting absentee ballots and paying for votes. Plaintiff possesses video evidence supporting her statements. The letter was issued by the Chairman "on behalf of the commission" without any vote, discussion, or authorization in a properly noticed public meeting, in violation of Alabama's Open Meetings Act and the commission's governing procedures.

## PARTIES

1.      Plaintiff, Gwendlyn Johnson is an individual and a resident of Elmore County, Alabama.

1

2.      Defendant Charlie King, Jr. (hereinafter referred to as "Charlie King") is a resident of Lowndes County Alabama and is the Chairman of the Lowndes County Commission. He is being sued in his individual and official capacity. At all times relevant, he acted under color of state law.

3.      Defendant Lowndes County Commission is a political subdivision of Alabama and public corporation performing governmental functions in Lowndes County, Alabama. The Lowndes County Commission is responsible for the actions of its officials and agents, including the Chairman.

## JURISDICTION AND VENUE

4.      This Court as subject-matter jurisdiction pursuant to 28 USC §§ 1331 and 1343() (3) because this action arises under the Constitution and laws of the United States, specifically the First Amendment and 42 U.S.C. § 1983.

5.      Venue is proper in the Northern Division of the Middle District of Alabama pursuant to 28 USC § 1391(b) because the events giving rise to the claims occurred in Lowndes County Alabama which lies within this division, and Defendants reside or conduct their business there.

6.      This Court has supplemental jurisdiction over Plaintiff's state-law claim pursuant to 28 U.S.C. § 1367.

## STATEMENT OF FACTS

7.      Plaintiff, Gwen Johnson, is a former Lowndes County native who has been active in politics within the County since the 1990's.

8.      Plaintiff became involved in the Fort Deposit (a town in Lowndes County) municipal election which was set aside due to absentee ballot fraud in August of 2025. Plaintiff became an outspoken media presence whose purpose was to educate the voting public about absentee voting and prevention of fraud in the Fort Deposit special election which took place in February of 2026. Her social media presence acquired a massive number of followers, most of whom are voters in the Lowndes County.

9.      Shortly after the Fort Deposit Special Election, candidates qualified for the Lowndes County Commission election and began their campaigns. Plaintiff picked up the torch again and continued to educate people against fraudulent voting practices that have been widely practiced in Lowndes County for many decades. Plaintiff posted truthful comments online criticizing several Lowndes County Commissioners for engaging in voter fraud, specifically harvesting absentee ballots and paying individuals for votes. These comments concerned matters of significant public concern—alleged public corruption in the electoral process.

10.     Specifically, Plaintiff alleged on social media, based upon her personal knowledge, that the Chairman of the Lowndes County Commission Charlie King and fellow incumbent commissioner Robert Harris were collecting illegal absentee ballots. She alleged that they were asking people who did not live in Lowndes County (or district two which was the contended seat) to vote absentee and were offering money to pay for the votes. Plaintiff possesses video evidence that substantiates her statements regarding the alleged ballot harvesting and vote-buying.

11.     As the election contest heated up, Plaintiff also became one of the mouthpieces to contest the location of a data center in Lowndes County that the Commission would be asked to approve tax abatements for and agree to the data center location in Lowndes County.

3

12.     Plaintiff would make truthful but negative remarks about Charlie King and Robert Harris based upon her personal knowledge and their words and behavior both during and outside of Commission meetings.

13.     Charlie King began indirectly threating Plaintiff, by use of third parties. Charlie King would call a friend of Plaintiff and say for example, "Gwen better stop saying things before something happens to her."

14.     Plaintiff knows that Charlie King's reputation in the community is that he does follow through with threats. Plaintiff became extremely anxious about her safety. Plaintiff did not let her distress about these threats stop her from continuing to speak out about voter fraud and the data center.

15.     Plaintiff purchased weapons to carry with her when she going to Lowndes County and began calling the Lowndes County Sheriff to let him know where she would be in Lowndes County in case something happened.

16.     On March 2, 2026, Defendant King, acting in his official capacity as Chairman, caused to be sent to Plaintiff a cease-and-desist letter. The letter was signed by Defendant King and expressly stated that it was sent "on behalf of the commission." The letter demanded that Plaintiff stop commenting online about the commissioners' alleged voter fraud and implied potential legal consequences if she did not comply. The letter in part stated as follows:

You are hereby directed to immediately cease and desist from making or repeating any false statements alleging budgetary misconduct or "vote buying" by the Lowndes County Commission or its members; remove and retract all prior posts, comments, videos, or publications containing these false allegations; and refrain from publishing any further false statements concerning the Commission or its members.

While the Commission prefers to resolve this matter informally, it will not permit the continued spread of knowingly false accusations. If you fail to comply with this demand, the Commission

4

reserves all rights to pursue appropriate legal remedies, including but not limited to a civil action for defamation, a request for injunctive relief, and recovery of damages, costs and attorney fees as permitted by law.

(Letter attached hereto as "Exhibit A").

17.     At no time prior to the sending of the letter was the matter discussed or voted upon by the Lowndes County Commission in any open public meeting. The official minutes of all prior commission meetings reflect no discussion, no motion, and no vote authorizing the letter or any related action. (Minutes of the Commission attached hereto as "Exhibit B")

18.     At the Commission meeting following receipt of the above letter, Plaintiff confronted the sitting commission about the letter. It became immediately clear to Plaintiff that some of the Commissioners did not know about the letter. The Plaintiff then sought the minutes of previous commission meetings and found that Charlie King did not have authority to send the cease-and-desist letter. Charlie King maliciously acted in his official capacity, without the knowledge of the governing body.

19.     The sole reason for the cease-and-desist letter was retaliation against Plaintiff for her protected online criticism of public officials. The timing and content of the letter demonstrate a direct causal connection between Plaintiff's speech and Defendants' adverse action. A person of ordinary firmness would be chilled from continuing to speak out on matters of public concern after receiving such an official threat from the Chairman of the county commission.

20.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered injury, including but not limited to chilled speech, emotional distress, fear of further retaliation, and the need to retain counsel. Plaintiff continues to suffer ongoing harm.

21.    Plaintiff has also been an active and vocal opponent of a proposed data center development (known as Project Red Clay or similar) in Lowndes County, speaking out both on social media and during public comment portions of Lowndes County Commission meetings.

22.    Over the last three commission meetings on April 29, 2026, May 11, 2026 (cancelled) May 26, 2026, and June 1, 2026 hundreds of citizens, including Plaintiff, have attended to express concerns about the project's potential impact on water resources, infrastructure, farmland, historic sites, and the community.

23.    The routine meeting location (the Charles Smith Building or equivalent commission chambers) has a capacity of approximately 40 people. Despite this known limitation and repeated requests from Plaintiff and other citizens, Defendants have refused to relocate the meetings to the Lowndes County Courthouse (located across the street and capable of accommodating larger crowds).

24.    On at least two occasions, citizens including those wishing to observe and participate were forced to stand outside in the rain due to lack of space inside the meeting venue.

25.    Plaintiff and others specifically requested that the Commission move the meetings to a larger, more accessible venue so that all interested people could see and hear the proceedings, consistent with the requirements and spirit of Alabama's Open Meetings Act.

26.    On information and belief, Defendant King initially agreed to move one or more meetings to the Courthouse but then refused to do so. This refusal occurred in the context of public protests and picketing by opponents of the data center project outside a related developer meeting.

27.    By deliberately holding meetings in an inadequate venue despite advance knowledge of large anticipated attendance, and by refusing reasonable accommodation requests,

6

Defendants have effectively restricted public access to, and meaningful observation of, official government proceedings on a matter of significant public concern. This conduct violates the letter and spirit of the Alabama Open Meetings Act and chills citizens' rights to observe and petition their government.

28.     In addition to the cease-and-desist letter and other retaliatory conduct, Defendant King made personal threats against Plaintiff's physical well-being. These threats were relayed to Plaintiff by third parties.

29.     The threats were made in retaliation for Plaintiff's protected speech and advocacy, including her online comments about alleged voter fraud and her public opposition to the proposed data center.

30.     As a direct and proximate result of these threats and the overall campaign of intimidation by Defendant King, Plaintiff has lived in constant fear for her personal safety. She felt so unsafe that she purchased firearms for self-protection at a cost of approximately $2,600, which she now carries with her everywhere she goes.

31.     Plaintiff also contacts the Lowndes County Sheriff's Office every time she travels into Lowndes County so that authorities know her location in the event that she encounters problems related to the threats.

32.     The conduct of Defendant King was intentional or reckless, extreme and outrageous, and has caused Plaintiff severe emotional distress that no reasonable person could be expected to endure.

## CLAIMS FOR RELIEF
### COUNT I – 42 U.S.C. § 1983 – FIRST AMENDMENT RETALIATION
### (AGAINST ALL DEFENDANTS)

7

33. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

34. Plaintiff engaged in constitutionally protected speech when she commented online about alleged voter fraud by public officials on a matter of public concern.

35. Defendants' sending of the unauthorized cease-and-desist letter was an adverse action taken under color of state law.

36. Plaintiff's protected speech was a substantial or motivating factor in Defendants' decision to send the letter.

37. The adverse action would chill a person of ordinary firmness from continuing to engage in protected speech.

38. Defendants' conduct violated Plaintiff's clearly established rights under the First Amendment to the United States Constitution.

39. Defendants' actions were not supported by any legitimate governmental interest and were instead motivated by a desire to suppress criticism and avoid accountability for alleged election-related misconduct.

40. As a result, Plaintiff is entitled to declaratory and injunctive relief, compensatory and punitive damages, and attorney's fees and costs.

**WHEREFORE,** Plaintiff respectfully requests that this Court:

A. Declare that Defendants' actions violated Plaintiff's First Amendment rights;

B. Issue a permanent injunction prohibiting Defendants from further retaliating against Plaintiff or any similarly situated citizen for protected speech criticizing county officials, and requiring immediate retraction of the cease-and-desist letter in writing;

C. Award compensatory damages in an amount to be determined at trial;

D. Award punitive damages against Defendant King in his individual capacity in an amount sufficient to punish and deter future unconstitutional conduct;

E. Award Plaintiff her reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988 and other applicable law; and

F. Grant such other and further relief as the Court deems just and proper.

## COUNT II – VIOLATION OF THE ALABAMA OPEN MEETINGS ACT
### (ALA. CODE § 36-25A-1 ET SEQ.)
### (AGAINST ALL DEFENDANTS)

41.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

42.    The Lowndes County Commission is a "governmental body" subject to the Alabama Open Meetings Act, Ala. Code § 36-25A-1 et seq.

43.    Ala. Code § 36-25A-1(a) declares it "the policy of this state that the deliberative process of governmental bodies shall be open to the public during meetings." The "open or public portion of a meeting" is defined as one "conducted so that constituents of the governmental body, members of the media, persons interested in the activities of the governmental body, and citizens of this state could, if they desired, attend and observe." Ala. Code § 36-25A-2(7).

44.    Defendants' repeated refusal to relocate commission meetings to a venue capable of accommodating the large number of citizens seeking to attend and observe—despite specific requests, known overcrowding, and citizens being excluded to stand outside in inclement weather—violates the Act's mandate that meetings be held in a manner allowing meaningful public attendance and observation. This is particularly egregious given the high public interest in

the data center proposal and the Commission's knowledge of anticipated crowds.

45.    Caselaw interpreting the Act confirms that governmental bodies may not exclude or effectively prevent the public from attending open portions of meetings. *See, e.g., Swindle v. Remington*, 291 So. 3d 439 (Ala. 2019) (circuit court finding violation where public was excluded from portion of a prearranged gathering); *Wilson v. City Council of Saraland*, 72 So. 3d 1190 (Ala. 2011) (discussing public's right to attend open portions).

46.    Defendant King's actions, including the alleged initial agreement followed by refusal, further demonstrate bad faith and a deliberate effort to limit public scrutiny of the Commission's handling of the data center matter.

47.    As a direct and proximate result, Plaintiff and other citizens have been denied their statutory right to attend and observe public meetings, suffering injury including frustration of the ability to participate in the democratic process, emotional distress, and the need to retain counsel.

48.    Plaintiff is entitled to declaratory and injunctive relief under Ala. Code § 36-25A-9, including an order requiring future meetings on matters of significant public interest to be held in venues adequate to accommodate anticipated attendance, plus attorney's fees and costs.

**WHEREFORE** Plaintiff prays this Court:

A. Declare that Defendants' actions violated Plaintiff's First Amendment rights;

B. Issue a permanent injunction prohibiting Defendants from further retaliating against Plaintiff or any similarly situated citizen for protected speech criticizing county officials, and requiring immediate retraction of the cease-and-desist letter in writing;

C. Award compensatory damages in an amount to be determined at trial;

D. Award punitive damages against Defendant King in his individual capacity in an amount

10

sufficient to punish and deter future unconstitutional conduct;

E. Award Plaintiff her reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988 and other applicable law; and

F. Declare that Defendants violated the Alabama Open Meetings Act;

G. Issue a permanent injunction requiring Defendants to hold commission meetings in venues sufficient to accommodate public attendance and observation, particularly on high-interest matters such as the proposed data center;

H. Grant such other and further relief as the Court deems just and proper.

## COUNT III – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (TORT OF OUTRAGE)
### (AGAINST DEFENDANT CHARLIE KING, JR., IN HIS INDIVIDUAL CAPACITY)

49.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

50.     Under Alabama law, a claim for intentional infliction of emotional distress (also known as the tort of outrage) requires that: (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was likely to result from his conduct; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff distress; and (4) the distress was severe. *See American Road Service Co. v. Inmon,* 394 So. 2d 361 (Ala. 1980); Harrelson v. R.J., 882 So. 2d 317 (Ala. 2003); *Horne v. TGM Associates*, L.P., 56 So. 3d 615 (Ala. 2010).

51.     Defendant King's personal threats against Plaintiff's physical well-being—relayed through third parties in the context of ongoing retaliation for her protected First Amendment

activity—constitute extreme and outrageous conduct that goes beyond all possible bounds of decency and is atrocious and utterly intolerable in a civilized society. This is particularly egregious given King's position as Chairman of the Lowndes County Commission, which imbues his threats with the authority and implied power of government office.

52. Defendant King acted intentionally or recklessly, knowing or should have known that such threats would cause severe emotional distress.

53. As a direct and proximate result of Defendant King's conduct, Plaintiff has suffered severe emotional distress, manifested by constant fear for her physical safety, the expenditure of $2,600 on firearms for protection (which she carries at all times), and the need to routinely contact the Lowndes County Sheriff's Office for safety checks whenever she enters the county. This distress is so severe that no reasonable person could be expected to endure it.

54. Plaintiff is entitled to compensatory and punitive damages, as well as other relief as the Court deems just.

**WHEREFORE** Plaintiff prays that this Court:

A. Award compensatory damages against Defendant King for intentional infliction of emotional distress;

B. Award punitive damages against Defendant King in an amount sufficient to punish and deter such outrageous conduct;

C. Award such other and further relief that justice may require.

Respectfully submitted this the __17__ day of __June__, 2026.

GWENDOLYN JOHNSON, PLAINTIFF

**STATE OF ALABAMA**                    )

**MONTGOMERY COUNTY**              )

Personally appeared before me, the undersigned and Notary Public in and for the State of ALABAMA at Large, GWENDOLYN JOHNSON, being by me and first duly sworn, and knowing the contents hereof voluntarily sign the same.

SUBSCRIBED AND SWORN TO before me this 17 day of June 2026.

Notary Public
My Commission Expires: 4/7/29

s/Arlene M. Richardson
Bar Number ASB 9452-I60A
Attorney for the Plaintiff
**Richardson Legal Center, L.L.C.**
P.O. Box 6
Highland Home, Alabama 36041
Telephone: (334) 537-9011
E-mail: arlawyer@mon-cre.net

